Rodríguez de Oronoz, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
El recurso de epígrafe fue presentado el 23 de junio de 2003. En el mismo, el codemandado y Peticionario Dr. Pedro J. Reyes (en adelante denominado como el “Dr. Reyes”), solicita que revoquemos una resolución notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante denominado como el “TPI”), el 23 de mayo de 2003. Mediante dicha resolución, el TPI declaró no ha lugar una moción de sentencia sumaria y una moción de reconsideración presentadas por el Dr. Reyes.
Por los fundamentos que se exponen a continuación, se expide el auto y se confirma la resolución recurrida.
I
El presente caso comenzó mediante demanda presentada el 29 de agosto de 1996 por Felicita Núñez Rosado, su esposo Manuel Pérez Torres, ambos por sí y en representación de la Sociedad Legal de Gananciales compuesta por éstos, la hija de éstos, Vivian Pérez Núñez, su esposo Juan Semidey Arroyo, ambos por sí y la Sociedad Legal de Gananciales compuesta por ambos (en adelante denominados como los “demandantes”). La parte demandada estaba compuesta por el Dr. Reyes, su esposa, ambos por sí y en representación de la Sociedad Legal de Gananciales compuesta por éstos, la Universidad de Puerto Rico (en adelante denominada como la “UPR”), el Hospital Universitario y otros demandados de nombre desconocido. El TPI el asignó el número KDP1996-0154 (801) al caso.
Las alegaciones de la demanda, sin que pasemos juicio sobre éstas, son las siguientes. En diciembre de 1993, la codemandante Felicita Núñez Rosado (en adelante denominada como “Doña Felicita”) visitó la oficina del Dr. Reyes, quejándose de un grave dolor de espalda. El Dr. Reyes la examinó y determinó intervenirla *627 quirúrgicamente. La cirugía ocurrió en el Hospital Universitario el 19 de abril de 1994. Después de esa cirugía, Doña Felicita desarrolló una infección en la herida y fue tratada con antibióticos por tres semanas. El 14 de junio de 1994, ésta fue sometida a otra cirugía con el propósito de eliminarle la infección. Esta fue dada de alta, pero notó que tenía una protuberancia en la espalda. Por esa razón, Doña Felicita sufrió una tercera cirugía en julio de 1994 y una cuarta cirugía posteriormente. Las cuatro cirugías fueron realizadas por el Dr. Reyes. Sin embargo, ninguna de las cuatro operaciones produjeron resultados positivos y Doña Felicita tuvo que ser operada por quinta ocasión en los Estados Unidos. En la demanda se le imputó al Dr. Reyes (y a los demás codemandados) haber incurrido en impericia médica con respecto a Doña Felicita y que dicha alegada impericia alegadamente le causó a ésta daños físicos, sufrimientos y angustias mentales, pérdida de ingresos, sufrimientos y angustias mentales y pérdida de ingresos a los demás codemandantes.
El 21 de mayo de 1997, el Dr. Reyes presentó una moción solicitando la desestimación de la demanda. Este alegó que para las fechas en que intervino con Doña Felicita, éste tenía un nombramiento de catedrático auxiliar y como empleado del Recinto de Ciencias Médicas de la UPR y que, según él, al ser empleado del Estado Libre Asociado de Puerto Rico (en adelante denominado como “ELA”), este estaba inmune a demandas como la de epígrafe por actos alegadamente negligentes dentro de su desempeño profesional. Junto con dicha moción, el Dr. Reyes acompañó una carta con fecha del 2 de octubre de 1996, emitida por la UPR, Recinto de Ciencias Médicas, en la cual el Director Dr. Rafael Fernández Filiberti indicaba que el Dr. Reyes era empleado de la UPR, Recinto de Ciencias Médicas “según la certificación número 6 (1991-92) de la Junta Administrativa con efectividad del 6 de septiembre de 1991” La certificación no fue anejada a la moción.
El 22 de julio de 1997, el TPI notificó sentencia archivando la demanda del caso KDP-1996-0154 (801) sin perjuicio. El 9 de marzo de 1998, los mismos demandantes de la demanda de ese caso presentaron una nueva demanda contra el Dr. Reyes, su esposa y la Sociedad Legal de Gananciales compuesta por ambos, la UPR y el Hospital Universitario. Sin embargo, éstos añadieron como codemandados al Departamento de Salud del ELA, la Administración de Servicios Médicos (en adelante denominada como “ASEM”), el Sindicato de Aseguradoras para la Suscripción Conjunta de Responsabilidad Profesional Médico-Hospitalaria y el Grupo Médico Ortopédico REC C MED. En esa nueva demanda, entre otras cosas, los demandantes reiteraron los hechos descritos en la primera demanda y añadieron que la alegada impericia médica incurrida por el Dr. Reyes le ocasionó a Doña Felicita una fractura o estillamiento en un disco de su columna vertebral y que por tal razón fue que ésta tuvo que ser operada en Estados Unidos. El TPI el asignó el número KDP-1998-0405 (802) al caso. Este segundo caso es el que es objeto del recurso de epígrafe.
El 25 de junio de 1998, el Dr. Reyes presentó una moción solicitando la desestimación de la demanda alegando que para las fechas en que éste intervino con Doña Felicita, tenía un nombramiento de catedrático auxiliar como empleado del Recinto de Ciencias Médicas de la UPR y que, según él, al ser empleado del ELA, éste estaba inmune a demandas como la de epígrafe por actos alegadamente negligentes dentro de su desempeño profesional. En dicha moción, el Dr. Reyes describió la mencionada carta con fecha del 2 de octubre de 1996, emitida por la UPR, Recinto de Ciencias Médicas, en la cual el Director Dr. Rafael Fernández Filiberti indicaba que el Dr. Reyes era empleado de la UPR, Recinto de Ciencias Médicas “según la certificación número 6 (1991-92) de la Junta Administrativa con efectividad del 6 de septiembre de 1991.” La carta y la certificación no fueron anejadas a la moción.
El 7 de diciembre de 2000, el Dr. Reyes presentó una moción en la cual, entre otras cosas, a base de un informe pericial del Dr. Casey K. Lee con fecha del 23 de junio de 1995, solicitó que el TPI emitiera sentencia sumaria desestimando la demanda en su totalidad. Además, en dicha moción, el Dr. Reyes argumentó que la parte demandante alegadamente no había cumplido con una orden del TPI del 13 de septiembre de 2000 donde alegadamente dicho foro le había requerido a la parte demandante que no más tarde del 1 de noviembre de 2000, informara quién sería su perito en este caso y que sometiera un informe pericial y currículum vitae, so pena de desestimar si demanda. Así, en dicha moción, el Dr. Reyes también solicitó la desestimación de la *628 demanda bajo ese argumento.
En moción del 29 de agosto de 2001, el Dr. Reyes reiteró su solicitud de desestimación por la vía sumaria, a base del mencionado informe del Dr. Lee y a base de su argumento de que la parte demandante alegadamente no había anunciado prueba pericial.
El 14 de septiembre de 2001, la UPR presentó una moción de desestimación y/o de sentencia sumaria. En dicha moción, la UPR se unió a las mociones de desestimación presentadas por el Dr. Reyes. La solicitud de sentencia sumaria presentada por la UPR fue por dos fundamentos separados, a saber: 1) que el mencionado informe del Dr. Lee eximía de responsabilidad a la parte demandada; 2) que la parte demandante no tenía prueba para sustentar sus alegaciones de negligencia. Este segundo fundamento sobre alegada insuficiencia de prueba, fue argumentado por la UPR a tenor con el caso de Medina v. M.S. & D. Química P.R., Inc., 1135 D.P.R. 716 (1994). Según la UPR, la parte demandante nunca produjo un informe pericial que estableciera la negligencia de los demandados. El 18 de septiembre de 2001, ASEM presentó una moción uniéndose a las solicitudes de desestimación presentadas por el Dr. Reyes y la UPR.
En moción presentada el 2 de octubre de 2001, la UPR indicó que el 12 de septiembre de 2001 la parte demandante había solicitado prórroga para oponerse a las solicitudes de desestimación presentadas por el Dr. Reyes y la UPR, pero que no había presentado dicho escrito de oposición. Además, la UPR indicó que el 2 de octubre de 2001 la parte demandante había informado que ésta había conseguido un perito, pero que necesitaba quince (15) días para informarle al TPI “sobre la evaluación del perito y su posición en cuanto a continuar o desistir del caso.” Según la UPR, la parte demandante no se opuso a las solicitudes de desestimación presentadas por el Dr. Reyes y la UPR y tampoco informó al TPI en tomo a la evaluación del perito ni su posición de si iba o no a desistir de su demanda. La UPR reiteró su solicitud de desestimación y/o de sentencia sumaria.
En moción del 24 de junio de 2002, la parte demandante compareció con una nueva representación legal indicando que su perito sería el Dr. Arturo Silvagnoli. En moción del 27 de junio de 2002, el Dr. Reyes se opuso a esa moción de la parte demandante. El abogado del Dr. Reyes, el Ledo. José E. O'Neill Font, argumentó que el Dr. Silvagnoli no podía ser perito de la parte demandante porque dicho letrado era abogado de ese doctor en dos casos judiciales. En moción del 26 de julio de 2002, la parte demandante se replicó a dicha moción del Dr. Reyes indicando que si existía un conflicto de intereses entre el abogado de dicho codemandado y el perito de la parte demandante, lo que procedía era que dicho letrado renunciara a la representación legal del perito, no que el perito no pudiera testificar en el caso de autos. El 27 de marzo de 2003, el TPI notificó una resolución en la cual aceptó el perito anunciado por la parte demandante.
El 7 de abril de 2003, el Dr. Reyes presentó una moción en la cual solicitó a TPI que reconsiderara su determinación de permitirle a la parte demandante anunciar prueba pericial, reiterando su argumento sobre el posible conflicto de interés del Ledo. José E. O'Neill Font. Dicho letrado argumentó que la solución a ese posible conflicto era que el perito, Dr. Silvagnoli, se abstuviera de testificar en casos en los cuales dicho letrado representara a alguna parte.
En su moción del 7 de abril de 2003, el Dr. Reyes también reiteró su solicitud de sentencia sumaria a tenor con el mencionado informe del Dr. Lee. Además, en Dr. Reyes acompañó otro informe, esta vez de una doctora de nombre Claudia Lorenzo que, según él, también determinaba que en este caso no había ocurrido una impericia médica. Incluso, en dicha moción, el Dr. Reyes expresó al TPI que su moción de desestimación por el fundamento de inmunidad de 25 de junio de 1998 aún no había sido resuelta, razón por la cual reiteró la misma.
El 14 de abril de 2003, el TPI notificó una orden requiriéndole a la parte demandante que replicara a la moción del Dr. Reyes del 7 de abril de 2003 en un término de veinte (20) días, lo cual dicha parte hizo en *629 moción presentada el 5 de mayo de 2003. En dicha moción, la parte demandante reiteró que quien tenía un conflicto de interés era el Ledo. José E. O'Neill Font y que la solución no era que el Dr. Silvagnoli no testificara como perito, sino que el Ledo. José E. O'Neill Font renunciara a la representación legal. La parte demandante también indicó que ella misma había contratado los servicios periciales de los doctores Lee y Lorenzo, pero que dichos informes no podían ser considerados como eximientes de responsabilidad a la parte demandada. En este sentido, la parte demandante se opuso a las solicitudes de sentencia sumaria del Dr. Reyes y de la UPR.
En su moción del 5 de mayo de 2003, la parte demandante también se opuso a la solicitud de desestimación del Dr. Reyes por el fundamento de inmunidad. La parte demandante alegó que el Dr. Reyes, para las fechas de los hechos alegados en la demanda, no era empleado de la UPR, sino que éste tenía su práctica privada y que por ese alegado hecho, el Dr. Reyes no tenía inmunidad.
El 9 de mayo de 2003, el Dr. Reyes presentó una moción en la cual, entre otras cosas, indicó que la relación de su abogado el Ledo. José E. O'Neill Font, con el perito de la parte demandante, Dr. Silvagnoli, en los otros caso judiciales mencionados anteriormente era una relación de abogado-cliente. Además, el Dr. Reyes reiteró que la mencionada carta del Dr. Fernández Filiberty del 2 de octubre de 1996 establecía que para las fechas de los hechos alegados en la demanda, el Dr. Reyes era empleado de la UPR y que, en consecuencia, éste estaba inmune a demandas como la de epígrafe por actos alegadamente negligentes dentro de su desempeño profesional. Junto con su moción del 9 de mayo de 2003, el Dr. Reyes acompañó una certificación suscrita por el Sr. Gilberto Casillas, Director del Departamento de Recursos Humanos del Recinto de Ciencias Médicas de la UPR, en la cual indicaba que desde el 16 de julio de 1990, el Dr. Reyes se desempeñaba como catedrático auxiliar en el departamento de ortopedia con un nombramiento “especiar’ con un sueldo de $3,124.00 mensuales. La certificación tiene fecha del 18 de septiembre de 1995. Finalmente, el Dr. Reyes indicó que aun asumiendo para fines de argumentación que él hubiese estado ejerciendo una práctica privada en la UPR, el estado de derecho era que la inmunidad también le cubría.
El 23 de mayo de 2003, el TPI notificó una orden mediante la cual declaró no ha lugar las solicitudes de sentencia sumaria del Dr. Reyes y de la UPR indicando que “debe verse lo planteado en un juicio plenarío, ya que existe una clara controversia de hechos”. Además, en dicha orden, el TPI declaró no ha lugar la moción de reconsideración presentada por el Dr. Reyes el 7 de abril de 2003 en torno a la determinación del TPI permitirle a la parte demandante anunciar prueba pericial. De estas determinaciones es que recurre ante nos el Dr. Reyes, como peticionario en el recurso de epígrafe.
Los tres señalamientos de errores expuestos en el recurso de epígrafe son los siguientes:

“1. Erró el Honorable Tribunal de Instancia al no desestimar la demanda, habida cuenta de que los propios peritos contratados por los demandantes han establecido que en el presente caso el recurrente no ha cometido acción negligente alguno.

2. Erró el Honorable Tribunal de Primera Instancia al no desestimar la demanda instada contra el compareciente quien ostenta inmunidad a través del Artículo 41.080 del Código de Seguros.

3. Erró, en la alternativa, el Honorable Tribunal de Primera Instancia al permitir la comparecencia de un perito en favor del abogado de la parte demandante, quien es, a su vez, cliente del abogado del recurrente. ”

II
Por estar íntimamente relacionados los señalamientos de errores 1 y 2, a continuación analizamos los mismos en conjunto. En su discusión de los dos primeros señalamientos de errores, lo que el Dr. Reyes argumenta son sus dos solicitudes de sentencia sumaria. La primera de ellas, como se ha visto, era que según él, los informes de los doctores Lee y Lorenzo lo eximían de responsabilidad en cuanto a las alegaciones de *630 impericia médica hecha en contra del Dr. Reyes y los demás codemandados. La segunda solicitud de sentencia sumaria, como se ha visto, se basa en las mencionadas carta y certificación de la UPR, Recinto de Ciencias Médicas, en las cuales alegadamente se indica que para las fechas en que ocurrieron los hechos alegados en la demanda el Dr. Reyes era empleado de la UPR y, según éste argumenta, ello significa que él está inmune de responsabilidad por imputaciones de impericia médica como la hecha en la demanda de epígrafe. Así, en esencia, en estos dos señalamientos de errores, el Dr. Reyes alega que el TPI debió desestimar la demanda por la vía sumaria.
Las Reglas 36.1, 36.2, 36.2 y 36.5 de las de Procedimiento Civil, en lo pertinente, disponen lo siguiente:

“Una parte que trate de obtener un remedio mediante demanda, reconvención, demanda contra tercero o sentencia declaratoria, podrá presentar una moción solicitando sentencia sumaria basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.

Una parte contra la cual se haya formulado una demanda contra coparte, demanda contra tercero, o contra la cual se solicite una sentencia declaratoria podrá...presentar una moción basada o no en declaraciones juradas para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

La sentencia se dictará inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a su favor...

...la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma detallada y específica, como lo hubiere hecho la parte promovente, exponiendo aquellos hechos que pertinentes a la controversia que demuestren que existe una controversia,real que debe ser dilucidada en un juicio. De no hacerlo así, se dictará sentencia la sumaria si procediere. ”

Nótese que el tribunal puede dictar sentencia sumaria, ya sea a favor o en contra de la parte que la solicitó, solamente si no existe controversia real sobre los hechos esenciales y el derecho le asiste a la parte a cuyo favor se emitiría la sentencia sumaria. Sin embargo, si existe alguna duda en cuanto a la realidad de algún hecho esencial, la el tribunal no debe emitir sentencia sumaria. Véanse Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538 (1991); Tello Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987); Mercado Vega v. U.P.R., 128 D.P.R. 273 (1991); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990). Además, el hecho de que la parte contra quien se presenta una moción de sentencia sumaria no se oponga a la misma no significa que dicha moción automáticamente deba ser declarada con lugar por el juzgador porque, a tenor con la Regla 36, solamente procede tal dictamen si no existe controversia sobre los hechos esenciales y si le asiste el derecho a la parte promovente de la moción.
En el presente caso, todos los hechos relacionados con la alegada impericia médica del Dr. Reyes están en controversia. Ello es así porque no se ha celebrado un juicio en su fondo en el cual las partes hayan presentado prueba en tomo a la alegada impericia médica del Dr. Reyes ni su alegado nexo causal con los daños alegadamente sufridos por la parte demandante. Los doctores Lee y Lorenzo (quienes alegadamente emitieron los informes periciales que el Dr. Reyes acompañó con su solicitud de sentencia sumaria), no han testificado ante el TPI. Además, ante dicho foro no se ha presentado prueba alguna en tomo a otros hechos esencialísimos tales como el historial médico de la codemandante Doña Felicita, las intervenciones del Dr. Reyes sobre la persona de dicha codemandante ni de las intervenciones de otros médicos y hospitales. Nótese que ante el TPI *631 ninguna de las partes ha presentado los récords médicos de Doña Felicita como tampoco han presentado un sólo testimonio de los hechos alegados en la demanda sobre el historial médico de dicha codemandante.
Nótese además que los doctores Lee y Lorenzo no han sido contrainterrogados ante el TPI, en el correspondiente juicio en su fondo, en cuanto a sus cualificaciones, las bases de sus informes ni sus opiniones, incluyendo la cuestión última. La Regla 53 de las de Evidencia requiere que antes de que un perito testifique en esa capacidad pericial, la parte que lo presenta tiene que probar sus cualificaciones como perito y en este caso la parte demandada no ha hecho tal cosa. Por su parte, la Regla 54 de las de Evidencia permite que todo perito sea contrainterrogado en tomo a sus cualificaciones y las bases de su opinión pericial, incluyendo la cuestión última a ser adjudicada en el caso. Sin embargo, en este caso ante el TPI no se ha presentado prueba en cuanto a ninguno de estos dos aspectos medulares de los doctores Lee y Lorenzo, razón por la cual permanecen en controversia todos los hechos relacionados con la teoría de la parte demandada de que el codemandado Dr. Reyes alegadamente no incurrió en impericia médica con respecto a la codemandante Doña Felicita.
Por otro lado, los hechos relacionados con la defensa de inmunidad presentada por el Dr. Reyes también están en controversia. El hecho base para tal defensa es que, según alega el Dr. Reyes, para las fechas en que éste intervino con Doña Felicita, éste tenía un nombramiento de catedrático auxiliar y como empleado del Recinto de Ciencias Médicas de la UPR y que, según él, al ser empleado del ELA, éste estaba inmune a demandas como la de epígrafe por actos alegadamente negligentes dentro del desempeño profesional. Los dos documentos a base de los cuales el Dr. Reyes hizo ese argumento son los siguientes:

“1. Una carta con fecha del 2 de octubre de 1996, emitida por la UPR, Recinto de Ciencias Médicas, en la cual el Director Dr. Rafael Fernández Filiberti indicaba que el Dr. Reyes era empleado de la UPR, Recinto de Ciencias Médicas ‘según la certificación número 6 (1991/1992) de la Junta Administrativa con efectividad del 6 de septiembre de 1991 ’.

2. Una certificación suscrita por el Sr. Gilberto Casillas, Director del Departamento de Recursos Humanos del Recinto de Ciencias Médicas de la UPR, en la cual indicaba que desde el 16 de Julio de 1990 el Dr. Reyes se desempeñaba como catedrático auxiliary en el departamento de ortopedia con un nombramiento ‘especial’ con un sueldo de $3,124.00 mensuales. La certificación tiene fecha del 18 de septiembre de 1995. ”

En primer lugar, la carta del 2 de octubre de 1996 no ha sido presentada ante el TPI. Lo que surge del Apéndice del recurso de epígrafe es que dicha carta se le presentó al TPI en el caso anterior al caso de epígrafe, pero así en el caso de autos. Por tanto, el TPI no ha tenido ante sí esa carta, razón por la cual dicho foro no podía hacer inferencia alguna en tomo a lo que el Dr. Reyes indica en sus mociones. Además, aun asumiendo para fines de argumentación que dicha carta indicara lo que dice el Dr. Reyes en sus mociones, permanece en controversia el estatus de dicho médico con respecto la UPR para las fechas en que ocurrieron los hechos alegados en la demanda. Ello es así porque en la descripción de la carta que ofrece el Dr. Reyes, más allá de meramente indicar que él era empleado del Recinto de Ciencias Médicas, no se indica cuáles eran sus funciones, sus supervisores, su compensación, su tipo de nombramiento ni ningún otro término de empleo con dicha entidad. La descripción de la carta tampoco indica las fechas en que el Dr. Reyes alegadamente fue empleado de la UPR.
En semejante situación se halla la certificación del 18 de septiembre de 1995. Dicha certificación tampoco describe los términos de la relación de trabajo entre el Dr. Reyes y la UPR. De hecho, la certificación tampoco indica las fechas en que el Dr. Reyes alegadamente fue empleado de la UPR. Por tanto, la realidad es que todos los hechos en tomo al Dr. Reyes y su relación con la UPR para las fechas en que ocurrieron los hechos alegados en la demanda están en controversia.
A tenor con lo anterior, resolvemos que los dos primeros señalamientos de errores imputados al TPI en el *632 recurso de epígrafe no fueron cometidos.
En el tercer señalamiento de error, el Dr. Reyes argumenta que el perito anunciado por la parte demandante, el Dr. Silvagnoli, está impedido de testificar. El argumento del Dr. Reyes es que su abogado, el Ledo. José E. O’Neill Font también era abogado del Dr. Silvagnoli en dos casos judiciales. Como se ha visto, el Ledo. José E. O’Neill Font expresó en su moción del 9 de mayo de 2003 que, en efecto, él representaba al Dr. Silvagnoli como parte en esos casos.
En ausencia de la aplicabilidad de derechos constitucionales del acusado de no autoincriminarse (Const. ELA, Art. II, Sec. 11), las Reglas de Evidencia son las que establecen las normas cuando hay que determinar si un testigo puede o no testificar. La Regla 2 de las de Evidencia dispone que “El fin último de estas reglas es el descubrimiento de la verdad. ” El comentario editorial de esa regla reitera ese principio. La Regla 43 de las de Evidencia también lo reitera al disponer que “...los testigos son interrogados con miras a que la evidencia sea presentada de la manera más efectiva posible para el esclarecimiento de la verdad. ”
Cónsono con el principio fundamental de que lo que pretendeh las Reglas de Evidencia es el descubrimiento de la verdad, la Regla 43 establece el principio general de que “Toda persona, es apta para ser testigo, salvo disposición en contrario en estas reglas o en alguna disposición de ley.” Es decir, la norma general es que cualquier persona puede ser testigo y para que no lo sea, tendría que ser aplicable alguna excepción de ley. La primera excepción la establece la Regla 37 de las de Evidencia al disponer que:
“Una persona no podrá servir como testigo si el tribunal determina que ella es incapaz de expresarse en relación al asunto sobre el cual declararía, en forma tal que pueda ser entendida, bien por sí misma o mediante intérprete, o que ella es incapaz de comprender la obligación de un testigo de decir la verdad. ”
Como puede verse, esta excepción claramente emana del fin fundamental de las Reglas de Evidencia de llegar a la verdad. Solamente se puede llegar a ella si el testigo puede expresarse en tomo a lo que pretende declarar, si éste puede hacer entender al juzgador y si el testigo comprende que tiene que decir la verdad. Según el Profesor Chiesa, las Reglas 4, 37 y 43 de las de Evidencia abandonaron viejas normas bajo las cuales se descalificaban testigos, favoreciéndose el principio de que toda persona puede testificar, a menos que sean aplicables excepciones expresas en la ley. Este ha expresado que “La regla general de competencia o capacidad testifical es muy sencilla...toda persona es apta para ser testigo, salvo disposición expresa en contrario.” Véase Chiesa, Tratado de Derecho Probatorio (Reglas de Evidencia de Puerto Rico y Federales), San Juan, Publicaciones J.T.S., Luiggi Abraham-Editor, 1998, Tomo I, págs. 320-321, 325. Aparte de la norma general de la Regla 37, a lo largo de las Reglas de Evidencia existen otras excepciones a la norma general de que toda persona puede ser testigo. Entre esas excepciones se encuentran los privilegios probatorios (Reglas 23-35), la norma de que el testigo no perito solamente puede testificar sobre materia de la cual tenga conocimiento personal (Regla 38), la norma de que las opiniones de testigos no peritos solamente se pueden basar en inferencias racionalmente basadas en su percepción (Regla 51), la ausencia de juramentación o afirmación del testigo (Regla 39) o que el testigo no testifique ante las partes y/o que no pueda ser contrainterrogado por éstas (Regla 40).
Por supuesto, un testimonio podría ser objetable por cualquier otro fundamento probatorio establecido en las Reglas de Evidencia, pero esos fundamentos no tratan sobre la capacidad para testificar, que es lo que nos ocupa, sino que una vez el testigo se sienta a declarar, alguna de sus expresiones puedan ser inadmisibles. Además, los fundamentos para impugnar la credibilidad de testigos reconocidos en las Reglas 44-48 de las de Evidencia tampoco constituyen impedimentos para que testifiquen, sino que son mecanismos que tiene la parte adversa para impugnar su credibilidad, no de impedir que se siente a testificar.
Para los abogados existe un impedimento legal a que éstos testifiquen. Se trata del Canon 22 de los de Etica *633 Profesional del Ejercicio de la Abogacía a tenor con el cual si existe la posibilidad de que el abogado que representa a una parte en un caso tenga que declarar como testigo en el mismo caso, éste no podría declarar. Sin embargo, bajo ese Canon, la solución no es que el abogado no testifique, sino que sea descalificado de la representación legal, lo cual es cónsono con el principio fundamental de la búsqueda de la verdad. Finalmente, en las Reglas 41 y 42 de las de Evidencia se disponen normas semejantes en cuanto a su capacidad para testificar.
A tenor con lo anterior, es evidente que bajo las Reglas de Evidencia en este caso no existe impedimento legal alguno para que el Dr. Silvagnoli se siente a testificar como perito de la parte demandante. No existe al presente un sólo hecho que active alguna de las excepciones a la norma general de que toda persona puede ser testigo. El hecho de que el Dr. Silvagnoli es representado en otros dos casos judiciales, como parte, por el Ledo. José E. O’Neill Font, quien representa al Dr. Reyes como codemandado en el caso de epígrafe, no representa un impedimento para que el Dr. Silvagnoli testifique como perito de la parte demandante en este caso. Al tribunal de instancia no le corresponde resolver si dicho letrado tendrá o no un conflicto de interés en otros casos.
A tenor con lo anterior, resolvemos que el tercer error imputado al TPI en el recurso de epígrafe tampoco fue cometido.
III
Por los fundamentos expuestos anteriormente, se expide el auto de certiorari y se confirma el dictamen recurrido.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2003 DTA 155
1. Dicha regla dispone que “Toda persona está cualificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficientes para cualificarla como un experto o perito en el asunto sobre el cual habrá de prestar testimonio. Si hubiere objeción de parte, dicho especial conocimiento, destreza, adiestramiento o instrucción, deberán ser probados antes de que el testigo pueda declarar como perito. ”
2. La Regla 54 dispone que “Sujeto a lo dispuesto en el inciso (B) de la Regla 53, todo testigo que declare en calidad de perito podrá ser contrainterrogado con igual amplitud y alcance que cualquier otro testigo y, además, podrá ser plenamente contrainterrogado sobre... (l)Sus cualificaciones como perito, (2) El asunto objeto de su testimonio pericial, y (3) Los hechos, datos y circunstancias en que su testimonio se funda.” Por su parte, la Regla 57 de las de Evidencia dispone que “No será objetable la opinión o inferencia de un perito por el hecho de que se refiera a la cuestión última que finalmente ha de ser decidida por el juzgador de los hechos.”